UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACCESS 4 ALL, INC., a Florida not for profit corporation, and FELIX ESPOSITO, Individually, | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | |
| | ) | 3:05-CV-1307-G |
| VS. | ) | |
| | ) | |
| WINTERGREEN COMMERCIAL PARTNERSHIP, LTD., a Texas Limited Partnership, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Wintergreen Commercial

Partnership, Limited ("Wintergreen") to dismiss the plaintiffs' claims against it for

lack of standing.  For the reasons stated below, the motion is granted.

I. BACKGROUND

The plaintiff Felix Esposito ("Esposito") is a Florida resident and a member of

the plaintiff Access 4 All, Inc. ("Access 4 All"), a non profit corporation formed under

the laws of Florida.  Plaintiff's [sic] Original Complaint ("Complaint") ¶¶ 1, 2; Felix Esposito's Affidavit ("Esposito Affidavit") ¶ 6, *attached to* Response to Defendant's Motion to Dismiss and Brief in Support Thereof ("Response") as Exhibit 1.  Because Esposito suffers from a neuro-psychological disorder, he requires the use of a wheelchair for ambulation.  Esposito Affidavit ¶ 1.  As an organization whose members include "individuals with disabilities as defined by the [Americans with Disabilities Act]," Access 4 All's stated purpose is "to represent the interest of its members by assuring places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities."  Complaint ¶ 11.

In April 2005, Esposito traveled to the Dallas area and stayed at Wintergreen's property, the Holiday Inn at 1515 North Beckley Drive in De Soto, Texas.  Esposito Affidavit ¶¶ 3, 4; Complaint ¶ 3.  There Esposito encountered architectural barriers that allegedly endangered his safety.  Esposito Affidavit ¶ 4; Complaint ¶ 13.  Shortly thereafter, Esposito and Access 4 All filed this suit seeking injunctive relief under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA").[1] Complaint ¶ 28.  Wintergreen then filed the instant motion to dismiss for lack of standing.  Docket Sheet; Defendant's Motion to Dismiss and Brief in Support ("Motion to Dismiss").

---

[1]        Under Title III, only injunctive relief is permitted.  42 U.S.C. § 12188(a); 28 C.F.R. § 36.501.

## II. ANALYSIS

### A. Standard for Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great*

*Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

The standard for reviewing a motion under Rule 12(b)(1), however, depends on whether the defendant makes a facial or factual attack on the plaintiffs' complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion. *Id.* In that case, the trial court must look at the sufficiency of the allegations in the complaint, which are presumed to be true. *Id.* The defendant makes a factual attack, on the other hand, by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court. *Id.* In a factual attack, the plaintiffs are also required to submit facts in support of jurisdiction and have the burden of proving, by a preponderance of the evidence, that the trial court has subject matter jurisdiction over the claims. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

Importantly, lack of Article III standing is a defect in subject matter jurisdiction. See *Bender v. Williamsport Area School District*, 475 U.S. 534, 541-42 (1986); *O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction. See *Chair*

*King, Inc. v. Houston Cellular Corporation*, 131 F.3d 507, 509 (5th Cir. 1997); *Bender*, 475 U.S. at 541.

In the instant motion, Wintergreen has presented the court with a facial attack on the standing of each plaintiff, asserting (without evidentiary support) that Esposito lacks standing because "he has not suffered an injury in fact," Motion to Dismiss at 3, and Access 4 All cannot establish either organizational or associational standing. *Id*. at 6. For the reasons discussed below, the court finds that neither Esposito nor Access 4 All have met the requirements for Article III standing, and therefore Wintergreen's motion to dismiss must be granted.

## B. Plaintiff Esposito's Standing

Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. CONST. art. III § 2. Standing -- *i.e.*, the need to show that the plaintiffs have a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990)) (internal quotation marks omitted). As the Supreme Court explained in *Lujan*, the "irreducible constitutional minimum of standing" has three elements:

- 5 -

> First, the plaintiff[s] must have suffered an "injury in fact"
> -- an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.'"  Second,
> there must be a causal connection between the injury and
> the conduct complained of -- the injury has to be "fairly
> . . . trace[able] to the challenged action of the defendant[s],
> and not . . . th[e] result [of] the independent action of
> some third party not before the court."  Third, it must be
> "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

504 U.S. at 560-61 (internal citations and footnote omitted); see also *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217-18 (5th Cir. 2001).  All three elements must exist to establish Article III standing.  *Vermont Agency*, 529 U.S. at 771.  Because these elements "are not mere pleading requirements but rather an indispensable part of the plaintiff[s'] case, each element must be supported in the same way as any other matter on which the plaintiff[s] bear[] the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation."  *Lujan*, 504 U.S. at 561.

    In addition, standing must exist at the time an action is commenced.  See *Lujan*, 504 U.S. at 569-70 n.4 ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").  Thus, "[b]elated efforts to bolster standing are futile."  *Equal Access for All, Inc. v. Hughes Resort, Inc.*, No. 5:04-CV-178-MCR, 2005 WL 2001740, at *5 (N.D. Fla. Aug. 10, 2005)

(quoting *Moyer v. Walt Disney World Company*, 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000)).

Standing is also required to obtain injunctive relief. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). The plaintiff must show that he " 'has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.' " *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). In the context of ADA claims, courts evaluate whether future injury is probable by determining whether the plaintiff is likely to return to the defendant's business. See, *e.g.*, *Cortez v. National Basketball Association*, 960 F. Supp. 113, 117-18 (W.D. Tex. 1997) (finding that the plaintiff lacked standing to seek injunctive relief because she did not allege that she intended to return to the defendant's events in the future). When analyzing this likelihood of return, courts have examined such factors as: (1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant. *D'lil v. Stardust Vacation Club*, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21, 2001); see also *Molski v. Mandarin Touch Restaurant*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005) (citing *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 n.10 (C.D. Cal. 2005)). Otherwise, "[s]uch 'someday

- 7 -

intentions' -- without any description of concrete plans, or indeed even any

specification of *when* the some day will be -- do not support a finding of the 'actual or

imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (emphasis in

original).

In the case *sub judice*, Esposito has not shown that he satisfies the requirements

for standing in a suit for injunctive relief.  Regarding the first factor -- proximity --

Esposito is a resident of Florida and defendant's business is in Texas.  Although some

courts have found that proximity bears heavily on the standing analysis, see *Parr v.

L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (court

found future return visits sufficient to confer standing where the plaintiff lived near

fast food restaurant, the plaintiff patronized other franchised locations, and the

impulse nature of visiting such establishments did not necessitate reservations), *Delil

v. El Torito Restaurants, Inc.*, No. C 94-3900-CAL, 1997 WL 714866, at *4 (N.D. Cal.

June 24, 1997) (court found the plaintiff lacked standing because she lived over 100

miles from restaurant and had not, in the four years since the incident of

discrimination, attempted to visit the restaurant), in the instant context involving a

hotel, this factor is not similarly applicable.  Therefore, this factor neither bolsters nor

undermines Esposito in his effort to establish standing.  As for Esposito's past

patronage of Wintergreen's De Soto business, "[p]ast exposure to illegal conduct does

not in itself show a present case or controversy regarding injunctive relief . . . if

unaccompanied by continuing, present adverse effect." *Lyons*, 461 U.S. at 102

(citation omitted).  Therefore, Esposito's alleged past injury -- suffered during a single

visit to a De Soto Holiday Inn in April 2005 -- alone is not sufficient.  See *Equal*

*Access*, 2005 WL 2001740, at *6.  Nor does the third factor, the definitiveness of

plaintiff's intent to return, weigh in Esposito's favor.  The complaint merely alleges

that Esposito "plans to return to the property to avail himself of the goods and

services offered to the public at the property."  Complaint ¶ 12.  Esposito indeed has

a confirmed reservation to return to the De Soto hotel on December 23, 2005.  *See*

Esposito Affidavit ¶ 5.  However, this reservation was not made until August 19,

2005, after both the complaint and this motion to dismiss were filed.  *See*

Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss at 3 n.2.

As standing is determined at the time the complaint is filed, the court will not

construe this "[b]elated effort[] to bolster standing" as beneficial to Esposito.  See

*Moyer*, 146 F. Supp. at 1253 (the plaintiff's visit to the defendant's business after the

complaint was filed did not confer standing); *Brother v. Tiger Partner, LLC*, 331

F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) (the fact that the plaintiff made a

reservation at the defendant's hotel after the complaint was filed was immaterial

because standing is determined as of the date the suit is filed).  The final factor looks

to the plaintiff's frequency of travel near the defendant.  Esposito has not presented

any evidence that he travels often to the De Soto area.  He merely asserts that, as a

retiree, he "frequently travel[s]." Esposito Affidavit ¶ 2.  Without additional evidence

or allegations that Esposito travels frequently to this area and would have need to

stay at this particular hotel, this factor does not favor Esposito, either.  See, *e.g.*,

*Disabled in Action of Metropolitan New York v. Trump International Hotel* & *Tower*, No. 01

Civ. 5518 (MBM), 2003 WL 1751785, at *8 (S.D.N.Y. Apr. 2, 2003) (court found

standing where the plaintiffs live in New York and have been to the defendant's

restaurant in the past); *Association for Disabled Americans, Inc. v. Claypool Holdings LLC*,

No. IP-00-0344-C-T/G, 2001 WL 1112109, at *20 (S.D. Ind. Aug. 6, 2001) (court

found standing where the plaintiff visited the area regularly for family occasions and

expressed a desire to stay at the defendant's hotel); *Rosenkrantz v. Markopoulos*, 254

F. Supp. 2d 1250, 1253 (M.D. Fla. 2003) (court found that the plaintiff lacked

standing because he traveled only twice a year and other hotels were closer to his

destination).  In sum, Esposito has not sustained his burden of establishing "actual or

imminent injury" necessary for a finding of standing.  Therefore, the court does not

have subject matter jurisdiction over Esposito's claims against Wintergreen, and his

claims must be dismissed.

### C.   Plaintiff Access 4 All's Standing

An organization may assert standing either on its own behalf (organizational)

or as the representative of its members (representational).  See *Hunt v. Washington*

*State Apple Advertising Commission*, 432 U.S. 333, 341-42 (1977).  A plaintiff choosing

to assert organizational standing must be able to demonstrate some injury it has suffered that meets the constitutional standing requirements as well as the prudential limitations on standing, unless Congress evidenced a clear intent to eliminate those prudential limitations under the statute in question. See *Havens Realty Corporation v. Coleman*, 455 U.S. 363, 378-79 (1982); *Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees*, 19 F.3d 241, 243-44 (5th Cir. 1994). The court must determine whether the group has "alleged such a personal stake in the outcome of the controversy as to warrant [ ] invocation of federal-court jurisdiction." *Havens Realty*, 455 U.S. at 378-79 (internal quotation marks and citations omitted). A "personal stake" includes an organization challenging "conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." *Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of Borough of Essex Fells*, 876 F. Supp. 641, 656 (D.N.J. 1995). On the other hand, a plaintiff has representational standing when (1) at least one of its members would otherwise have standing to sue in his own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. See *Hunt*, 432 U.S. at 343; *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552-53 (1996).

Access 4 All has failed to make a showing of an injury-in-fact sufficient to confer organizational standing.[2]  Although Access 4 All alleges that it and its members "have suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination," Complaint ¶ 11, this bare assertion is not enough to articulate an "invasion of a legally-protected interest," *Lujan*, 504 U.S. at 560, affecting *itself* in its own right, rather than its members.  See also *Equal Access for All*, 2005 WL 2001740, at *7 (an allegation of "frustration" of the organization's stated institutional purpose is insufficient to confer standing); *Kessler*, 876 F. Supp. at 656 (standing is not established by the organization's mere allegation that "it has an ideological or abstract social interest that is adversely affected by the challenged action").  Access 4 All has not alleged any injury to itself as an organization, such as the need to divert funds in order to challenge Wintergreen's allegedly illegal conduct. See *Kessler*, 876 F. Supp. at 656.  As a result, Access 4 All has not established organizational standing.

Regarding representational standing, Access 4 All has mentioned only one member of its organization with individual standing to bring this suit against Wintergreen:  Esposito.  As discussed above, however, Esposito has not been shown

---

[2]     While Wintergreen contests Access 4 All's organizational standing in its motion to dismiss, Access 4 All did not address those arguments.  *See generally* Response; Plaintiffs' Surreply to Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss; Complaint ¶ 11.  Instead, Access 4 All addresses its standing under the *Hunt* test analyzing representational standing.  Response at 6-9.  Consequently, Access 4 All has not shown that it has organizational standing.

to have standing.  In the absence of other members with individual standing, Access 4 All cannot satisfy the constitutional requirements for representational standing. Wintergreen's motion to dismiss Access 4 All's claims is therefore granted.[3]

III.  <u>CONCLUSION</u>

For the reasons stated above, Wintergreen's motion to dismiss for lack of standing is **GRANTED**.

**SO ORDERED**.

November 7, 2005.

_____
A. JOE FISH
CHIEF JUDGE

---

[3]      All is not lost, though, as 42 U.S.C. § 12188(b)(1)(B) permits the Attorney General to bring a civil suit to enforce Title III.  See *Delil*, 1997 WL 714866, at *5 (the Attorney General may bring a civil action "[i]f the Attorney General has reasonable cause to believe that . . . any person or group of persons has been discriminated against . . . and such discrimination raises an issue of general public importance").  Therefore, dismissal of this action does not preclude remediation of any alleged discrimination by Wintergreen.

- 13 -
